Mark Brnovich
Attorney General

Michael Tryon, (#003109)
Senior Litigation Counsel
Stephanie Elliott (#030872)
Assistant Attorney General
1275 W. Washington
Phoenix, Arizona 85007-2926
Telephone: (602) 542-8355
Fax: (602) 364-2214
Michael.Tryon@azag.gov
Stephanie.Elliott@azag.gov

*Attorneys for State Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Octavio Castañeda-Flores and Brenda Santana, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Maricopa County, a political subdivision of the State of Arizona; et al.,<br><br>Defendants. | Case No: CV-14-01960-PHX-SRB<br><br>**STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Federal Rule of Civil Procedure 56, Local Rule 56.1, and this Court's Order dated June 23, 2015 (Doc. 123), Defendants State of Arizona, Christopher and Connie Oberly, and Michael Gannon (the "State Defendants"), respectfully move for partial summary judgment on Counts 1, 2, and 3 of the Second Amended Complaint ("SAC") (Doc. 107).

## I. <u>INTRODUCTION</u>

Plaintiffs allege the State Defendants violated their constitutional rights when they investigated Plaintiff Castañeda-Flores' admitted use of a stolen identity to obtain and continue employment. Information which revealed Plaintiff Castañeda-Flores' admitted identity theft, was disclosed and used by the State Defendants in a criminal

investigation pursuant to A.R.S. § 41-1959(C)(5). It was not in 2012 nor is it now clearly established that a DES employee must ignore identity theft and allow criminal activity to flourish under the guise of confidentiality. Because the State Defendants did not violate any clearly established statutory or constitutional right, they are entitled to qualified immunity and summary judgment on Plaintiffs' 42 U.S.C. § 1983 claims set forth in Counts 1, 2, and 3 of the SAC.

## II. RELEVANT FACTS

In 2007, Plaintiffs applied for welfare benefits through the Department of Economic Security ("DES") on behalf of their minor children. SOF ¶ 1. The DES benefit application process required that Plaintiffs submit proof of household income of all adults to determine eligibility. SOF ¶ 2. In June 2008, Plaintiff Castañeda-Flores provided proof of his income in the form of an employment letter from Ashley Home Furniture. SOF ¶ 3. The employment letter identified the employee as "Luis Franco." SOF ¶ 4. It is undisputed that Plaintiff Castañeda-Flores was using another person's identity for employment purposes and in fact, Plaintiff Castañeda-Flores wrote on the employment letter that he "work[ed] under the name of Luis Franco. . . for work purpose[s] only." SOF ¶¶ 5-6.

On August 29, 2012, in response to a tip from a DES welfare fraud investigator regarding potential identity theft, Defendant Cuellar forwarded information regarding Plaintiff Castañeda-Flores, including the employment letter from Ashley Home Furniture, to Defendant Oberly[1], a detective with the Office of the Inspector General of the Arizona Department of Transportation ("ADOT"). SOF ¶¶ 7-9. Defendant Cuellar informed Defendant Oberly that she was working on an ID theft case and requested that he research the issue. SOF ¶ 10. Defendant Oberly did not solicit or otherwise request that Defendant Cuellar send him this information. SOF ¶ 11. However, the transfer of information between the two agencies was certainly not an anomaly. For years, both

---

[1] Defendant Oberly works in the Fraudulent Document Unit and his job duties include investigating identity theft and forgery. SOF ¶ 13.

2

Defendants worked on identity theft cases within their respective agencies and shared information in order to combat this serious crime. SOF ¶ 12.

Defendant Oberly opened an ADOT investigation into Plaintiff Castañeda-Flores' identity theft, which was documented in Defendant Oberly's report and signed off on by his supervisor, Defendant Gannon. SOF ¶¶ 14-15. This investigation culminated with Plaintiff Castañeda-Flores' arrest on September 18, 2012 and prosecution for Forgery and Taking the Identity of Another.[2] SOF ¶¶ 16-17.

After the criminal case against Plaintiff Castañeda-Flores was dismissed, SOF ¶ 21, Plaintiffs brought civil claims against the State Defendants for allegedly violating his constitutional rights.[3]

### III. THE STATE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotations omitted). The doctrine of qualified immunity evolved to protect dual interests, holding officials accountable for unreasonable actions while at the same time protecting officials from liability when their actions are reasonable under the circumstances. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "It is an immunity from suit rather than a mere defense to liability." *Lacey v. Maricopa County*, 649 F.3d 1118, 1130 (9th Cir. 2011) (quoting *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (internal quotations omitted).

---

[2] A.R.S. § 13-2009(A)(3) and the portion of A.R.S. § 13-2008(A) that addresses actions committed "with the intent to obtain or continue employment" have been preliminarily enjoined in an unrelated case but were in full effect at the time of Plaintiff Castañeda-Flores' prosecution. SOF ¶ 24.

[3] Plaintiffs also allege additional non-constitutional claims, not at issue in this motion.

3

Courts use a two-part inquiry to determine whether qualified immunity applies. The first inquiry is whether the allegations, taken in the light most favorable to the plaintiffs, show that the official violated the plaintiffs' constitutional rights. *Lacey*, 649 F.3d at 1131. The second inquiry is "whether the right was clearly established." *Id.* (citations omitted). The Court can perform the inquiries in any order it sees fit but if it answers either inquiry in the negative, qualified immunity applies. *Id.*

It is the plaintiff's burden to prove that the law governing a defendant's conduct was "clearly established*.*" *Maraziti v. First Interstate Bank of California*, 953 F.2d 520, 523 (9th Cir. 1992). Plaintiffs can only satisfy their burden with case law that existed at the time of the alleged violation and arguably, the case law must be from the United States Supreme Court, the Ninth Circuit, or the Arizona Supreme Court. *Marsh v. County of San Diego*, 680 F.3d 1148, 1158-59 (9th Cir. 2012) ("In any event, the opinions by a federal district court and an intermediate state court are insufficient to create a clearly established right."). Although the Court need not find a case directly on point to hold that a right is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).

At bottom, qualified immunity protects an official from suit unless he was on notice that his conduct was unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). To that end, a right is clearly established if at the time of the challenged conduct, "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This standard is directed at the knowledge of a reasonable official in a given circumstance and a qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Thus, the standard maintains protection for an officer who makes a decision— even if it is ultimately found constitutionally infirm—which stems from a reasonable

misunderstanding of the applicable law as it applies to his particular circumstances. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law . . . leav[ing] ample room for mistaken judgments." *Lacey*, 649 F.3d at 1131 (internal citations and quotations omitted). And leaving ample room for officers to disagree on the meaning of a law, as long as their conclusions are objectively reasonable in light of their individual circumstances. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993).

### A. Defendant Oberly is Entitled to Qualified Immunity on Plaintiffs' Fourth Amendment Claim (Count 1)

"When a law enforcement officer asserts qualified immunity from liability for Fourth Amendment violations, the district court must determine whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed his conduct was lawful." *Act Up!/Portland*, 988 F.2d at 871.[4] A.R.S. § 41-1959 governs the disclosure of information held in DES files. The statute specifically permits release of information to state agencies for official purposes and instructs that "[a]ll information received by a governmental agency . . . shall be maintained as confidential, except where pertinent to a **criminal prosecution**." A.R.S. § 41-1959(C)(5) (emphasis added). That is exactly what was done here.

First, Defendant Oberly did not violate any constitutional right when he accepted information from a DES supervisor who was investigating identity theft, instituted a criminal investigation, and finally turned over the information to the Maricopa County Attorney's Office ("MCAO") for criminal prosecution. "Unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Transwestern Pipeline Co., LLC v. 17.19 Acres of Property Located in Maricopa Cnty.*,

---

[4] As a preliminary matter, "[i]t is established that, when a person communicates information to a third party even on the understanding that the communication is confidential, he cannot object if the third party conveys that information or records thereof to law enforcement authorities." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984) (internal citations omitted).

5

627 F.3d 1268, 1270 (9th Cir. 2010). Both the disclosure by DES and Defendant Oberly's transmission of the information to MCAO fall squarely within the plain and ordinary meaning of the statutory exception. The information was received for an *official purpose* (investigating a crime), and was disclosed in connection to a *criminal prosecution* (identity theft and forgery).

Assuming for the sake of argument that the statute did not permit disclosure of the evidence of Plaintiff Castañeda-Flores' identity theft, Defendant Oberly would still be entitled to qualified immunity because the right to confidentiality of information provided to DES on a welfare benefits application, even if that information includes evidence of a crime, is not clearly established. The lack of case law interpreting the application of A.R.S. § 41-1959 to DES records which contain evidence of a crime typifies a right which is not clearly established such that it puts an officer on notice that his actions may be violative. Accordingly, during Plaintiff Castañeda-Flores' criminal proceedings, he confirmed to the Superior Court that whether DES can disclose evidence of a crime to law enforcement is an issue of first impression, foreclosing the argument that the law was clearly established. SOF ¶ 18. During the Superior Court proceedings, the Court requested case law supporting Plaintiff's argument that evidence from the DES benefit file was wrongfully disclosed in violation of a confidentiality statute. SOF ¶ 19. Plaintiff could not provide any:

> THE COURT: So you're saying there is no Appellate Court case I can look at to help me?
> MS. ZAVALA: There are cases regarding Child Protective Services and DES records and saying that DES records can't be released.
> THE COURT: And you cited those?
> MS. ZAVALA: I haven't because they really weren't exactly on point. It's just generally the confidentiality that I've mentioned here.
> THE COURT: Okay. So this is a case of first impression?
> MS. ZAVALA: Pretty much. I mean, I haven't found any cases where you have a DES employee taking this confidential information and sending it to a completely unrelated law enforcement agency, when it wasn't even requested.

SOF ¶ 19.

Although the Superior Court granted Plaintiff Castañeda-Flores' motion to suppress the evidence disclosed from the welfare benefit file, SOF ¶ 20, both Plaintiff Castañeda-Flores and the Court were considering the issue for the first time. Defendant Oberly is in the same situation.

Absent any guiding case law (let alone clearly established law), Defendant Oberly's belief that his conduct was lawful was reasonable under the circumstances. In investigating cases of identity theft, Defendant Oberly received information indicating that Plaintiff Castañeda-Flores was using someone else's identity for employment purposes in violation of Arizona Statute. Receiving and then forwarding this information to MCAO would certainly fall within a reasonable reading of the plain language of A.R.S. § 41-1959. Furthermore, the reciprocal relationship between DES and ADOT for combatting identity theft had existed for years with no questions regarding its legality. SOF ¶ 12. Defendant Oberly certainly did not knowingly violate the law nor were his actions "plainly incompetent" as would be required to divest him of qualified immunity. It simply defies logic that a government official, tasked with investigating identity theft, would be required to intentionally overlook evidence of admitted identity theft.

The DES regulations contained in the Arizona Administrative Code do not clarify the obligations and duties of law enforcement in this factual context. Two code provisions, A.A.C. R6-12-102 and A.A.C. R6-17-307, address confidentiality concerns in two specific contexts, the "Cash Assistance Program" and the "General Assistance Program" respectively. Neither of these two contexts applied to Defendant Oberly. Defendant Oberly's investigation of Plaintiff Castañeda-Flores focused on general identity theft, not specific to the Cash Assistance Program or the General Assistance Program and therefore those code provisions are not instructive. SOF ¶ 22. Not only are these regulations inapplicable to Defendant Oberly's actions but even if this Court found that they do in fact apply, absent preexisting case law, Defendant Oberly is still entitled

to qualified immunity because they right was not clearly established **at the time of the alleged violation**.

### B. Defendant Oberly is Entitled to Qualified Immunity on Plaintiffs' Familial Association Claim (Count 2)

Defendant Oberly is entitled to qualified immunity on Plaintiffs' familial association claim because Plaintiffs have not shown that Defendant Oberly violated clearly established law. First, Plaintiffs' claim cannot survive the initial qualified immunity inquiry of whether Defendant Oberly even violated their constitutional rights and in any event, the right was not clearly established. To succeed on a familial association claim, Plaintiffs must show that Defendant Oberly's conduct "shock[ed] the conscience or offend[ed] the community's sense of fair play and decency." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011) (internal quotations and citations omitted). The Ninth Circuit provided an example of such "conscience shocking" conduct:

> [A] plaintiff stated a claim under § 1983 for a violation of the right to family integrity where her mentally disabled son was mistaken for another person, falsely arrested, caused to be extradited to New York from California, and imprisoned; the police department misinformed her of his whereabouts on several occasions until he was finally released two years later.

*Id.* (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 685-86 (9th Cir. 2001)).

Furthermore, the Ninth Circuit has clarified that in situations of arguably wrongful arrest, it is the continued detention that causes the interference with familial association, not the arrest itself. *Crowe v. County of San Diego*, 608 F.3d 406, 441-42 (9th Cir. 2010). In *Crowe*, the Court denied summary judgment because the plaintiffs were continually detained based on coerced confessions that were obtained by methods that "shocked the conscience," and the officers knew that the illegally obtained confessions would be used to justify the detentions. *Id.*

Defendant Oberly's actions did not violate Plaintiffs' constitutional rights. Unlike the situations in *Rosenbaum* and *Crowe*, Plaintiffs here demonstrate no facts indicating

that Defendant Oberly's conduct comes close to "shocking the conscience." He initiated an investigation based on Plaintiff Castañeda-Flores' own admission that he was using someone else's identity for employment purposes. Furthermore, as explained fully in Section II.A., Defendant Oberly had the reasonable belief that his conduct was lawful based on the plain language of the statute, common practice, and common sense. Plaintiffs' argument fails both prongs of the qualified immunity inquiry and Defendant Oberly is entitled to qualified immunity.

### C. Defendant Gannon is Entitled to Qualified Immunity on Plaintiffs' Supervisory Liability Claim (Count 3)

There is no vicarious liability under 42 U.S.C. § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisory liability claim only survives if 1) the supervisor was personally involved in a constitutional violation, or 2) "sufficient causal connection" exists between the supervisor's alleged wrongful conduct and the constitutional violation. *Lacey*, 649 F.3d at 1136. Personal involvement could include "culpable action or inaction in the training, supervision, or control of . . . subordinates . . . acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." *Id*. (quoting *Starr v. Baca*, 633 F.3d 1191, 1195 (9th Cir. 2011)). In *Lacey*, the Court granted Sheriff Arpaio qualified immunity because plaintiffs could not show that Arpaio was sufficiently personally involved in ordering or carrying out unconstitutional arrests even though he may have encouraged the issuance of improper subpoenas and even "conducted the arrests via the 'Selective Enforcement Unit'." *Id*. (The "allegations . . . are long on conjecture but short on the factual nexus necessary to sustain a claim." (internal quotations omitted)).

The allegations against Defendant Gannon are similarly bare. The only allegations Plaintiffs make against Defendant Gannon are that he was Defendant Oberly's supervisor, signed off on Defendant Oberly's report, and "did not ensure that

Defendant Oberly had obtained the evidence mentioned in [his report] in a lawful manner." SOF ¶ 23. It is difficult to conceive of a way that Plaintiffs' three allegations show that Defendant Gannon consciously acquiesced in a constitutional deprivation or acted with a callous indifference to Plaintiffs rights when he signed off on an investigation that originated from at minimum, arguably valid evidence of a crime. None of Plaintiffs' three allegations against Defendant Gannon show the required personal involvement or causal connection to the alleged violation. Nor does any allegation show that Defendant Gannon was on notice that any of his actions violated any of Plaintiffs' constitutional rights.

Not only is the right Plaintiffs claim was violated tenuous at best, and certainly not clearly established, but Plaintiffs do not and cannot show a sufficient connection to Defendant Gannon. He is therefore entitled to qualified immunity.

## IV. **CONCLUSION**

For the reasons stated above, the State Defendants respectfully request that this Court find that the State Defendants are entitled to qualified immunity on Counts 1, 2, and 3 of Plaintiffs' SAC and grant the State Defendants Partial Summary Judgment.

Respectfully submitted this 7th day of July, 2015.

          Mark Brnovich
          Attorney General

          s/ Stephanie Elliott
          Michael Tryon
          Stephanie Elliott
          *Attorneys for State Defendants*

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on July 7, 2015, I electronically transmitted the foregoing |
| 3 | documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a |
| 4 | Notice of Electronic Filing to the CM/ECF registrants on record. |
| 6 | By s/ Stephanie Elliott |
| 7 | #4526904 |