**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Octavio Castañeda-Flores, et al., | No. CV-14-01960-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Maricopa County, et al., | |
| Defendants. | |

The Court now considers Defendants State of Arizona, Christopher and Connie Oberly, and Michael Gannon's ("State Defendants") Motion for Partial Summary Judgment ("MPSJ") (Doc. 127).

**I.   BACKGROUND**

In 2007, Plaintiffs Octavio Castañeda-Flores and Brenda Santana applied for welfare benefits with the Arizona Department of Economic Security ("DES") on behalf of their minor children. (Doc. 128, State Defendants' Statement of Facts in Supp. of MPSJ ("DSOF") ¶ 1; Doc. 139, Plaintiffs' Controverting and Separate Statement of Facts in Supp. of Resp. to MPSJ ("PSOF") ¶ 1.) Pursuant to this application, Plaintiff Castañeda-Flores provided an employment letter from Ashley Home Furniture, which indicated that he was working under the name "Luis Franco." (DSOF ¶¶ 3-4; PSOF ¶¶ 3-4.) In August 2012, Defendant Sally Cuellar, a DES supervisor, released Plaintiff's letter of employment and other confidential information from his DES file to Defendant Christopher Oberly. (DSOF ¶ 9; PSOF ¶¶ 9, 30.) Defendant Oberly was a detective with

the Office of Inspector General of the Arizona Department of Transportation ("ADOT"). (DSOF ¶ 7; PSOF ¶ 7.) Defendant Cuellar indicated to Defendant Oberly that she was "working on an ID theft case" concerning Plaintiff. (DSOF ¶ 10; PSOF ¶ 10.) Defendant Oberly did not solicit or otherwise request that Defendant Cuellar send him Plaintiff's confidential information. (DSOF ¶ 11; PSOF ¶ 11.)

Under the supervision of Defendant Michael Gannon, Defendant Oberly began an ADOT investigation into Plaintiff's alleged identify theft. (DSOF ¶ 15; PSOF ¶ 15.) Plaintiff was eventually prosecuted for Forgery and Taking the Identify of Another related to his employment with Ashley Home Furniture. (DSOF ¶¶ 14, 17; PSOF ¶¶ 14, 17.) A Maricopa County Superior Court judge concluded that the release of Plaintiff's confidential DES records constituted an illegal search and seizure in violation of the Fourth Amendment and ordered all evidence obtained as a result of the unlawful disclosure be suppressed. (DSOF ¶ 20; PSOF ¶ 20; *see also* Doc. 139-1, Ex. F, Maricopa County Superior Ct., *United States v. Castañeda-Flores*, CR2012-149489, May 24, 2013 Order at 4-5.) The criminal charges against Plaintiff were subsequently dismissed. (DSOF ¶ 21; PSOF ¶ 21.)

As relevant to this Motion, Plaintiffs have alleged 42 U.S.C. § 1983 claims against Defendant Oberly based on a violation of the Fourth Amendment and a violation of Plaintiffs' constitutional right to familial association, as well as against Defendant Gannon under a theory of supervisory liability. (Doc. 107, Second Am. Compl. ¶¶ 108-22.) State Defendants move for summary judgment on these claims, arguing that Defendants Oberly and Gannon are entitled to qualified immunity. (MPSJ at 5-10.)

## II.  LEGAL STANDARDS AND ANALYSIS

### A.  Plaintiffs' Rule 56(d) Request

In their Response to State Defendants' Motion for Partial Summary Judgment, Plaintiffs request that the Court defer consideration of the Motion so that they may conduct additional discovery. (Doc. 138, Pls.' Resp. to MPSJ ("Resp.") at 17; Doc. 138-1, Pls.' Rule 56(d) Decl.) Federal Rule of Civil Procedure 56(d) provides that a court may

deny or defer ruling on a summary judgment motion when the opposing party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion. The declaration must set out "the specific facts it hopes to elicit from further discovery" and show that "the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Plaintiffs have not met this burden because their declaration fails to identify any specific facts they hope to elicit from further discovery and how those facts are essential to oppose State Defendants' Motion. The Court denies Plaintiffs' Rule 56(d) request.

### B.  Motion for Partial Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is properly granted when: (1) there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material, and "all inferences are to be drawn in the light most favorable to the non-moving party." *Eisenberg*, 815 F.2d at 1289; *see also Celotex*, 477 U.S. at 324. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

State Defendants move for summary judgment on Plaintiffs' § 1983 claims against Defendants Oberly and Gannon, arguing that they are entitled to qualified immunity. (MPSJ at 5-8.) "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity analysis proceeds in two steps. A court must determine "whether [(1)]'the officer's conduct violated a constitutional right' and whether [(2)]'the right was clearly established' at the time of the alleged misconduct," such that a reasonable officer would have known that he or she was acting unlawfully. *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If the answer to both inquiries is yes, then the officer is not entitled to qualified immunity. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053 (9th Cir. 2007). If either answer is no, then the officer is entitled to qualified immunity. *See Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009).

### 1.     42 U.S.C. § 1983 – Fourth Amendment

Plaintiffs allege that Defendant Oberly violated Plaintiff Castañeda-Flores's Fourth Amendment rights when he received Plaintiff's confidential DES records from Defendant Cuellar and transmitted those records to the Maricopa County Attorney's Office ("MCAO"). (Resp. at 6-15.) Assuming this conduct amounts to a constitutional violation, Defendant Oberly is entitled to qualified immunity unless Plaintiffs can show that the constitutional right was "clearly established" at the time of the violation. *See Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014) ("The plaintiff bears the burden of proof that the right allegedly violated was clearly established[.]" (alteration in original) (internal quotations omitted)). As an initial matter, the Court notes that the constitutional right to be free from unreasonable search and seizure is, in the abstract, clearly established. For purposes of qualified immunity, however, "[f]or a constitutional right to be clearly established, '[t]he contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right.'" *Alston*, 663 F.3d at 1098 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)); *see also Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (stating that defining the constitutional right at a high level of generality "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced"). In other words, "the right the [defendants] are alleged to have violated must be 'clearly established' in a more particularized, and hence more relevant, sense." *Id.* (quoting *Anderson*, 483 U.S. at 640). In this case, Plaintiffs must establish that Defendant Oberly would have clearly understood that he was violating Plaintiff's Fourth Amendment right to be free from unlawful search and seizure by receiving unsolicited confidential DES records that included evidence of a crime, and then forwarding those records to the MCAO.

Plaintiffs briefly argue that because a Maricopa County Superior Court judge has already determined that the dissemination of Plaintiff's confidential DES information violated his Fourth Amendment right, State Defendants are collaterally estopped from arguing that this right was not clearly established. (Resp. at 6.) Even assuming the state court concluded that Defendant Oberly's conduct violated Plaintiff's Fourth Amendment right,[1] the question of whether the specific right at issue was "clearly established" at the time of the violation is a distinct inquiry that was not addressed in the underlying criminal proceedings. *See Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (stating that the party asserting collateral estoppel must establish that the issue previously decided is identical to the issue sought to be relitigated). Accordingly, the Court cannot conclude that the doctrine of collateral estoppel precludes State Defendants from asserting that the constitutional right violated was not clearly established at the time

---

[1] The state court decision that Plaintiffs cite specifically stated that "it was improper and a violation of defendant's Fourth Amendment rights *for a supervisor at DES* to take confidential information from a DES welfare benefit file, for defendant's U.S. Citizen children, and *send that information unsolicited and unrequested* to [Defendant Oberly] through email." (Ex. F, Maricopa County Superior Ct., *United States v. Castañeda-Flores*, CR2012-149489, May 24, 2013 Order at 5 (emphasis added).) The Court cannot conclude from this statement that the state court determined it was Defendant Oberly's conduct, as opposed to the actions of Defendant Cuellar, that constituted an unlawful search and seizure of Plaintiffs' DES records.

- 5 -

of the violation.

Plaintiffs also argue that the search and seizure of Plaintiff's DES records was clearly unlawful under Arizona Revised Statute § 41-1959 and Arizona Administrative Code §§ R6-12-102 and R6-17-307, which govern the dissemination of confidential information by DES employees. (Resp. at 7-14.) Whether Defendant Oberly violated clearly established state law or DES regulations, however, is not the focus of this qualified immunity inquiry. To determine whether an official is eligible for qualified immunity, the Court must determine "whether a reasonable [state actor] would have known that the [defendant's] conduct violated [the plaintiff's] *federal* statutory or constitutional rights rather than merely a state law or policy provision." *Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 929 (9th Cir. 2001) (emphasis added); *see also Davis v. Scherer*, 468 U.S. 183, 193-94 (1984) (stating that a state actor retains qualified immunity if the federal constitutional right was not clearly established, even if the conduct clearly violated state statute or regulation).[2] Accordingly, even if the Court were to conclude that Defendant Oberly's conduct violated Arizona law and DES regulations, Plaintiffs have cited no case law nor proffered any other argument persuading the Court that this conduct necessarily gave rise to a *constitutional* violation that was clearly established at the time of the violation. *See Cooper v. State of Cal.*, 386 U.S. 58, 61 (1967) ("[T]he question . . . is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment."). Because Plaintiffs have failed to meet their burden of showing that Defendant Oberly's conduct in this case violated a particularized constitutional right that was clearly established at the time of the violation, Defendant Oberly is entitled to qualified immunity on Plaintiffs' § 1983 claim based on a violation of the Fourth Amendment.

---

[2] Although Arizona law and DES regulations may be relevant to the question of whether Defendant Oberly acted reasonably even in light of a clearly established constitutional right, this is a distinct inquiry from the question of whether the right was clearly established. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 871-72 (9th Cir. 1993); *see also Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 881 (9th Cir. 2002) (stating that defendants who act in reliance on a state statute are generally presumed to act reasonably, even if the statute is later found to be unconstitutional).

### 2. 42 U.S.C. § 1983 – Familial Association

State Defendants argue that Defendant Oberly is entitled to qualified immunity on Plaintiffs' § 1983 claim based on a violation of their substantive due process right to familial association. (MPSJ at 8-9.) State Defendants specifically argue that Plaintiffs cannot establish that Defendant Oberly engaged in conduct sufficiently egregious to support their familial association claim. (*Id.*) Plaintiffs' only counterargument is that "Defendant Oberly violated Plaintiffs' family integrity when he committed the illegal search and seizure of Plaintiffs' confidential DES information that resulted in Plaintiff's eight month incarceration." (Resp. at 14-15.)[3]

To prevail on their § 1983 claim premised on the unwarranted interference with familial rights, Plaintiffs must demonstrate that Defendant Oberly engaged in conduct that was so egregious or ill-conceived that it shocks the conscious. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (stating that only official conduct that "shocks the conscience" is cognizable as a due process violation). The Court cannot conclude that Plaintiffs have met this burden. As stated above, the Court cannot conclude that Defendant Oberly engaged in conduct that was clearly prohibited by the Fourth Amendment and, even so, Plaintiffs have not persuasively argued that such conduct necessarily rises to the level of egregious behavior that "shocks the conscious." Because Plaintiffs have presented insufficient evidence to establish that Defendant Oberly engaged in conduct that "shocks the conscience," the Court grants summary judgment in favor of Defendant Oberly on Plaintiffs' § 1983 claim based on a violation of their right to familial association.

### 3. 42 U.S.C. § 1983 – Supervisory Liability

State Defendants argue that Defendant Gannon is entitled to qualified immunity

---

[3] Plaintiffs argue that State Defendants improperly address the merits of their familial association and supervisory liability claims under § 1983. (Resp. at 14-15.) Because the question of whether a constitutional violation occurred is relevant to the issue of qualified immunity, the Court will address whether Defendant Oberly's and Defendant Gannon's conduct violated Plaintiffs' constitutional rights. *Hopkins*, 573 F.3d at 762 ("If the alleged conduct did not violate a constitutional right, then the defendants are entitled to immunity and the claim must be dismissed.").

- 7 -

on Plaintiffs' § 1983 claim because Plaintiffs are unable to show either Defendant Gannon's personal involvement or a causal connection between any wrongful conduct on the part of Defendant Gannon to an alleged constitutional violation. (MPSJ at 9-10); *see Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (stating that supervisory liability can be imposed only if (1) the supervisor was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation). Plaintiffs only argue that Defendant Gannon is not entitled to qualified immunity because he should have known that Plaintiff's DES records were "improperly obtained in violation of state law and DES agency procedures," yet "failed to do what a reasonable supervisor would have done when confronted with a flagrant violation of an individual's Fourth Amendment rights." (Resp. at 15-16.) As stated above, even if Defendant Oberly's receipt of the records at issue violated Arizona law and DES regulations, Plaintiffs have failed to show that these records were obtained pursuant to a search that clearly violated Plaintiff's Fourth Amendment rights. Because Plaintiffs have failed to show that Defendant Oberly's conduct violated a clearly established constitutional right, Plaintiffs' argument in support of their § 1983 claim against Defendant Gannon must fail. Because Plaintiffs have not identified any wrongful conduct on the part of Defendant Gannon to support a § 1983 claim based on a theory of supervisory liability, the Court grants summary judgment in favor of Defendant Gannon.

### III. CONCLUSION

The Court concludes that State Defendants are entitled to summary judgment on Plaintiff's § 1983 claims against Defendant Oberly (Counts 1 and 2) and Defendant Gannon (Count 3).

/ / /

/ / /

/ / /

/ / /

**IT IS ORDERED** granting State Defendants' Motion for Partial Summary Judgment (Doc. 127).

Dated this 3rd day of November, 2015.

_____
Susan R. Bolton
United States District Judge